UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────────

ANTHONY F. COMUNALE,

                Plaintiff,

v.

HOME DEPOT, U.S.A., INC., and
CITIBANK, N.A.,

                Defendants.

───────────────────────────────────

**DECISION AND ORDER**

6:18-CV-06066 EAW



## INTRODUCTION

Plaintiff Anthony F. Comunale ("Plaintiff") filed this action in New York State Supreme Court on October 13, 2017, alleging damages resulting from the "willful[] and reckless[]" conduct of Defendants Home Depot, U.S.A., Inc. ("Home Depot") and Citibank, N.A. ("Citibank") (collectively, "Defendants"). (Dkt. 1-2). Specifically, Plaintiff alleges that Defendants disregarded evidence of fraudulent credit activity in his name, and have continued to demand payment for expenses accrued without his consent. (*Id.* at 5-6). As a result, Plaintiff claims that he has "suffered economic loss" and that his "credit has been damaged." (*Id.* at 6). On January 22, 2018, pursuant to 28 U.S.C. § 1332(a), Defendants removed the action to this Court based upon diversity jurisdiction. (Dkt. 1).

Presently before the Court is Defendants' motion to dismiss Plaintiff's complaint for failure to state a claim. (Dkt. 4). For the following reasons, Defendants' motion is granted, and Plaintiff's complaint is dismissed.

- 1 -

## FACTUAL BACKGROUND[1]

On or about June 16, 2013, one or more persons applied for a credit account in Plaintiff's name at Home Depot without Plaintiff's knowledge or consent. (Dkt. 1-2 at ¶ 4). Citibank services Home Depot's credit accounts. (*Id.* at ¶ 3). The unidentified individual or individuals used Plaintiff's Social Security Number and other personal information to establish the credit account in Plaintiff's name. (*Id.* at ¶¶ 4-5). Unbeknownst to Plaintiff, the unidentified party or parties also charged various items to the account. (*Id.* at ¶ 6). Someone other than Plaintiff made installment payments to this account for about a year, at which time all such payments ceased. (*Id.* at ¶ 7).

Sometime within or about the month of September 2014, Plaintiff's former wife showed Plaintiff a statement for the above account, which indicated that a balance of $6,541.25 was due. (*Id.* at ¶ 8). Plaintiff then contacted "one or both" Defendants to notify them that he had no knowledge of this account, that it was fraudulently established, and that the charges were incurred without his consent or knowledge. (*Id.* at ¶ 9). Since September 2014, Plaintiff has provided additional information to "one or both" Defendants, allegedly demonstrating that the account was not established by him. (*Id.* at ¶ 10). Plaintiff has also complied with all information requests solicited by either Home Depot or Citibank regarding a fraud investigation related to this credit account. (*Id.* at ¶ 11).

Nevertheless, "one or both" Defendants have repeatedly told Plaintiff that he owes the entire balance due on the account. (*Id.* at ¶ 12). Plaintiff alleges that in doing so, "one

---

[1] The following facts are taken from Plaintiff's complaint unless otherwise indicated. (Dkt. 1-2).

or both Defendants have willfully and recklessly disregarded the evidence of fraud provided to Defendants by Plaintiff." (*Id.* at ¶ 13). Plaintiff further alleges that, since September 2014, "one or both" Defendants have repeatedly reported Plaintiff as delinquent to multiple credit reporting agencies. (*Id.* at ¶ 14). Even after Plaintiff "advised credit reporting agencies that the account had been fraudulently established in his name and that he was not responsible for any portion of the account," Defendants informed "credit report agencies that in fact the account was Plaintiff's obligation," even though "they knew or should have known that it was not." (*Id.* at ¶ 15). Defendants have also continued to request that Plaintiff pay the deficiencies on the account. (*Id.* at ¶ 16).

Plaintiff asserts that his credit has been damaged, and that he has suffered economic loss as a result of Defendants' actions. (*Id.* at ¶ 17). Plaintiff claims that because Defendants have provisioned erroneous information to the credit reporting agencies, he has been unable to secure any credit, which has cost him various business opportunities. (*Id.*).

## PROCEDURAL HISTORY

On January 26, 2018, Defendants moved to dismiss Plaintiff's complaint for failure to state a claim. (Dkt. 4). Plaintiff opposed Defendants' motion. (Dkt. 10). Defendants argue that Plaintiff fails to specify a "cognizable theory of liability," and therefore, he does not satisfy the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. (Dkt. 4-4 at 7-8); *see* Fed. R. Civ. P. 8(a). Defendants also assert that even if Plaintiff properly articulated common law claims against them, such claims are preempted by the federal Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"). (Dkt. 4-4 at 9-10).

Finally, Defendants argue that any credit reporting claims Plaintiff might have are time-barred by the FCRA's two-year statute of limitations. (Dkt. 4-4 at 12).

On July 10, 2018, the Court heard argument on Defendants' motion to dismiss. The Court *sua sponte* raised the issue of its subject matter jurisdiction by informing the parties of an error in the notice of removal. The Court permitted Defendants to file supplemental papers to cure the defect. The Court otherwise reserved decision on Defendants' motion. On July 16, 2018, Defendants submitted a declaration in further support of their motion. (Dkt. 14).

## DISCUSSION

I. **Subject Matter Jurisdiction**

A. **General Principles**

"Federal courts have a duty to inquire into their subject matter jurisdiction sua sponte, even when the parties do not contest the issue." *D'Amico Dry Ltd. v. Primera Mar. (Hellas) Ltd.*, 756 F.3d 151, 161 (2d Cir. 2014). "It is well-settled that the party asserting federal jurisdiction bears the burden of establishing jurisdiction." *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006). "In a case removed to federal court from state court, the removal statute is to be interpreted narrowly, and the burden is on the removing party to show that subject matter jurisdiction exists and that removal was timely and proper." *Winter v. Novartis Pharm. Corp.*, 39 F. Supp. 3d 348, 350 (E.D.N.Y. 2014) (citing *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269 (2d Cir. 1994)). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

B.  **Diversity Jurisdiction**

"Diversity jurisdiction exists where the parties are citizens of different states and the amount in controversy exceeds $75,000." *Ceglia v. Zuckerberg*, 772 F. Supp. 2d 453, 455 (W.D.N.Y. 2011). "'[C]itizens of different States' means that there must be complete diversity, i.e., that each plaintiff's citizenship must be different from the citizenship of each defendant." *Hallingby v. Hallingby*, 574 F.3d 51, 56 (2d Cir. 2009); *see Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 445 (2d Cir. 1995) ("It is a long-settled rule that in order to invoke diversity jurisdiction, the petitioner must show 'complete diversity'—that is, that it does not share citizenship with any defendant."). "A person's citizenship for purposes of diversity is based upon his domicile." *Ceglia*, 772 F. Supp. 2d at 455. "For purposes of determining diversity, 28 U.S.C. § 1332(c) provides that 'a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.'" *Sty-Lite Co. v. Eminent Sportswear Inc.*, 115 F. Supp. 2d 394, 398 (S.D.N.Y. 2000). In this Circuit, "a national bank is a citizen only of the state listed in its articles of association as its main office." *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 219 (2d Cir. 2016).

C.  **The Court Has Subject Matter Jurisdiction Over This Action**

Defendants sought to remove this action to federal court based upon diversity jurisdiction. (Dkt. 1 at ¶¶ 2-5). In doing so, Defendants alleged that Plaintiff is domiciled in the State of New York, and that neither Citibank nor Home Depot are citizens of New York State for diversity purposes. (*Id.* at ¶¶ 3-4). Defendants sufficiently alleged that Citibank, a national banking association, has its "main office" located in the State of South

Dakota, and thus, it is a citizen of that State for diversity purposes. (*Id.* at ¶ 5). Home Depot, on the other hand, is a corporation. As such, it is a citizen of the State "by which it has been incorporated and of the State where it has its principal place of business." *Sty-Lite Co.*, 115 F. Supp. 2d at 398 (quoting 28 U.S.C. § 1332(c)). Defendants alleged that Home Depot is a citizen of the State of Delaware because it is incorporated under the laws of that State. (Dkt. 1 at ¶ 5). However, Defendants initially failed to set forth any allegations concerning Home Depot's principal place of business. *See Neat-N-Tidy Co. v. Tradepower (Holdings) Ltd.*, 777 F. Supp. 1153, 1156 (S.D.N.Y. 1991) ("If a complaint fails to allege a corporation's principal place of business, and if there is a possibility that a party's citizenship, through its principal place of business, might destroy diversity, then the pleading is insufficient to establish diversity jurisdiction.").

Nevertheless, the Court granted Defendants leave to file additional papers in support of this Court's subject matter jurisdiction because "[w]hen diversity is not absent from a notice of removal but is defectively alleged, courts typically permit the removing party to amend its notice of removal." *Linium, LLC v. Bernhoit*, No. 17-CV-0200 (LEK)(CFH), 2017 WL 2599944, at *3 (N.D.N.Y. June 15, 2017) (quotations omitted) (collecting cases). On July 16, 2018, Defendants submitted an attorney declaration affirming that Home Depot is incorporated under the laws of the State of Delaware, and that it maintains a principal place of business in Atlanta, Georgia. (Dkt. 14 at ¶ 3). Defendants also confirmed that Citibank is a citizen of the State of South Dakota for diversity purposes because it is "a national banking association organized under the laws of the United States of America with a main office . . . located in the state of South Dakota." (*Id.* at ¶ 4).

Accordingly, the Court finds that because there is complete diversity between the parties, and since the amount in controversy is allegedly over $75,000,[2] this Court has subject matter jurisdiction to entertain this action.

## II. Defendants' Motion to Dismiss for Failure to State a Claim

### A. Legal Standard Under Rule 12(b)(6)

"In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996) (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). A court should consider the motion by "accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008) (internal quotations and citation omitted). To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

---

[2] Although Plaintiff's complaint alleges that the allegedly fraudulent account contained a balance of only $6,541.25 as of September 2014, (Dkt. 1-2 at ¶ 8), Plaintiff also alleges that he has suffered "lost business opportunities because he has been unable to obtain credit as a result of the erroneous information provided to credit reporting agencies by one or both Defendants" (*id.* at ¶ 17). Defendants' counsel alleges that the amount in controversy exceeds $75,000 because Plaintiff made a subsequent demand for $100,000 to compensate for those lost business opportunities and other economic losses. (Dkt. 1 at ¶ 2; *see* Dkt. 1-1 at 2). That demand is attached as Exhibit A to Defendants' notice of removal. (Dkt. 1-1).

the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (internal quotations and citations omitted). Thus, "at a bare minimum, the operative standard requires the plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (alteration in original) (internal quotations and citations omitted).

### B. Federal Preemption

The Supremacy Clause of the United States Constitution instructs that the Constitution and laws of the United States are "the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI cl. 2. "[S]tate and local laws that conflict with federal law are 'without effect.'" *N.Y. SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 103 (2d Cir. 2010) (quoting *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008)).

> In general, three types of preemption exist—(1) express preemption, where Congress has expressly preempted local law; (2) field preemption, "where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law"; and (3) conflict preemption, where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives.

*Id.* at 104 (citation omitted).

Express preemption exists when Congress "define[s] explicitly the extent to which its enactments pre-empt state law." *English v. Gen. Elec. Co.*, 496 U.S. 72, 78 (1990) (citation omitted). "When Congress has made its intent [to preempt state law] known through explicit statutory language," the courts' application of the preemption doctrine is fairly simple. *Id.* at 79. Field preemption applies where federal law "regulates conduct in a field that Congress intended the Federal Government to occupy exclusively." *Id.* Conflict preemption will apply where a state law is inconsistent with, or conflicts with, a federal statute. *See Mut. Pharm. Co., Inc. v. Bartlett*, 570 U.S. 472, 479-80 (2013) (finding a state law that required additional pharmaceutical labeling to be inconsistent with a federal law that prevented companies from altering Food and Drug Administration labels).

### C. The Federal Fair Credit Reporting Act

#### 1. Claims Preempted by the FCRA

The FCRA contains two preemption clauses that are relevant to this action. *See* 15 U.S.C. §§ 1681h(e), 1681t(b). Section 1681h(e) provides, in pertinent part:

> [N]o consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or *any person who furnishes information to a consumer reporting agency*, based on information disclosed pursuant to section 1681g, or 1681m of this title . . . .

*Id.* § 1681h(e) (emphasis added). Section 1681t(b) further provides that "[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of

persons who furnish information to consumer reporting agencies . . . ." *Id.* § 1681t(b)(1)(F).[3]

The Second Circuit has held that § 1681t(b)'s preemptory language is broad, and that it encompasses both state statutory and common law causes of action. *See Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 106 (2d Cir. 2009) (per curiam) ("The phrase '[n]o requirement or prohibition' sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common-law rules." (quoting *Cipollone v. Ligett Grp., Inc.*, 505 U.S. 504, 521 (1992) (plurality opinion))). The Second Circuit has also determined that the preemptory clauses set forth in § 1681h(e) and § 1681t(b)(1)(F) do not conflict. *Macpherson v. JP Morgan Chase Bank, N.A.*, 665 F.3d 45, 47 (2d Cir. 2011). As the *MacPherson* court explained, "[s]ection 1681h(e) preempts *some* state claims that could arise out of reports to credit agencies; § 1681t(b)(1)(F) [simply] preempts *more* of these claims." *Id.* (quoting *Purcell v. Bank of Am.*, 659 F.3d 622, 625 (7th Cir. 2011)). In

---

[3] Although Plaintiff uses the term "*credit* reporting agencies," and the FCRA defines the term "*consumer* reporting agency," there does not appear to be a material difference between these terms for purposes of this motion. *See* 15 U.S.C. § 1681a(f) (defining a "consumer reporting agency" as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports"); *see also Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 150 (2d Cir. 2012) (applying the term "credit reporting agencies" in the relevant FCRA context); *Caltabiano v. BSB Bank & Tr. Co.*, 387 F. Supp. 2d 135, 137 (E.D.N.Y. 2005) (same).

other words, § 1681t(b)(1)(F)[4] "accomplish[es] a more broadly-sweeping preemption." *Id.* at 48.

"The FCRA 'was enacted to ensure that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer . . . .'" *Dickman v. Verizon Commc'ns, Inc.*, 876 F. Supp. 2d 166, 171 (E.D.N.Y. 2012) (quoting *Caltabiano v. BSB Bank & Trust Co.*, 387 F. Supp. 2d 135, 139 (E.D.N.Y. 2005)). "As part of this regulatory scheme, the [FCRA] imposes several duties on those who furnish information to consumer reporting agencies." *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 150 (2d Cir. 2012).[5] Two such duties are "codified at 15 U.S.C. §§ 1681s-2(a) and (b)." *Redhead v. Winston & Winston, P.C.*, No. 01 Civ. 11475(DLC), 2002 WL 31106934, at *4 (S.D.N.Y. Sept. 20, 2002). In defining the contours of § 1681t(b)(1)(F)'s preemptory reach, it is important to articulate the regulatory requirements set for in § 1681s-2. *See* 15 U.S.C. § 1681t(b)(1)(F).

Section 1681s-2(a) "relates to the furnishers' duty to report accurate information and their ongoing duty to correct inaccurate information." *Redhead*, 2002 WL 31106934, at *4; *see Smith v. RJM Acquisitions, LLC*, No. 14-CV-186-JTC, 2014 WL 3107291, at *5

---

[4] Congress added § 1681t(b)(1)(F) as an amendment to the FCRA in 1996, 26 years after § 1681h(e) and the original legislation was enacted. *Macpherson*, 665 F.3d at 47.

[5] "The term 'furnishers of information' is not defined in the statute, but it has been interpreted to mean 'entities that transmit, to credit reporting agencies, information relating to debts owed by consumers.'" *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 430 n.11 (S.D.N.Y. 2010) (quoting *Kane v. Guar. Residential Lending, Inc.*, No. 04-CV-4847 (ERK), 2005 WL 1153623, at *3 (E.D.N.Y. May 16, 2005)).

(W.D.N.Y. July 7, 2014) ("FCRA also imposes a duty on 'furnishers of information' to provide accurate information to [credit reporting agencies], and specifically prohibits reporting a consumer's information to a [credit reporting agency] if the furnisher 'knows or has reasonable cause to believe that the information is inaccurate.'" (quoting 15 U.S.C. § 1681s-2(a)(1)(A))). More specifically:

> Subsection (a) forbids providing any information to a credit reporting agency if the furnisher of information is informed *by the consumer* that the information is inaccurate. Moreover, if a person learns that any reported information is inaccurate, Subsection (a) obligates that person to notify the credit reporting agency of the inaccuracies, and to provide corrections for any incomplete or inaccurate information.

*Kane v. Guar. Residential Lending, Inc.*, No. 04-CV-4847 (ERK), 2005 WL 1153623, at *3 (E.D.N.Y. May 16, 2005) (emphasis added).

Section 1681s-2(b) "governs the furnishers' duty once notice is received *from a credit reporting agency* that there is a dispute as to the completeness or accuracy of the information provided to that reporting agency." *Redhead*, 2002 WL 31106934, at *4 (emphasis added). "Under Subsection (b), once a credit reporting agency gives notice to an information furnisher, the furnisher must conduct an investigation into the information in question, and must disseminate the results of that investigation." *Kane*, 2005 WL 1153623, at *4. In order to trigger the requirements of § 1681s-2(b), "the person reporting information must have received notice of the dispute from a consumer reporting agency." *MacPherson v. JP Morgan Chase Bank, N.A.*, No. 3:09CV1774 (AWT), 2010 WL 3081278, at *4 n.6 (D. Conn. Aug. 5, 2010), *aff'd*, 665 F.3d 45 (2d Cir. 2011). "Notice from an individual consumer, in the absence of notice from a credit reporting agency, is

insufficient to trigger the duties contained in Subsection (b)." *Kane*, 2005 WL 1153623, at *4. In sum, "[s]ection 1681s-2(a) applies when the consumer has notified the furnisher of inaccuracies, and section 1681s-2(b) applies when the furnisher has been notified by a credit reporting agency of a dispute by the consumer." *Weich-Pulaski v. Wells Fargo Bank Minn., Nat. Ass'n*, No. CV 09-1670 (JS) (WDW), 2010 WL 5491113, at *3 (E.D.N.Y. Dec. 9, 2010), *report and recommendation adopted sub nom. Weich-Pulaski v. Wells Fargo Bank Minn., N.A.*, No. 09-CV-1670 (JS) (WDW), 2011 WL 17522 (E.D.N.Y. Jan. 3, 2011).

Consistent with the language of § 1681t(b)(1)(F), courts have found that any state law claims that relate to the "subject matter" of § 1681s-2 are preempted by the FCRA. *See, e.g., Okocha v. HSBC Bank USA, N.A.*, 700 F. Supp. 2d 369, 375-77 (S.D.N.Y. 2010) (dismissing some of the plaintiff's state law claims based on preemption by § 1681t(b)(1)(F)). In *Okocha*, the plaintiff brought suit after the defendants allegedly reported that he was delinquent on a credit account that the plaintiff had opened with them, but which the plaintiff contended he had never used. *Id.* at 371-72. The court dismissed the allegations asserting the following state law causes of action:

> (1) fail[ure] to maintain and follow reasonable procedures to ensure the accurate reporting of information, (2) fail[ure] to delete inaccurate information after notification, (3) fail[ure] to conduct proper investigations, and (4) reporting to third parties information affecting the plaintiff's reputation for credit worthiness, with knowledge or reason to know that such information was false.

*Id.* at 375. The *Okocha* court reasoned that these allegations fell within the subject matter of § 1681s-2, and thus were preempted by § 1681t(b)(1)(F). *Id.* at 376; *see Smith*, 2014 WL 3107291, at *6 (granting the defendant's motion to dismiss the "plaintiff's claim of

false or inaccurate reporting of consumer information in violation of" New York State's General Business Law § 349 because that claim "falls squarely within the subject matter regulated under § 1681s-2 of the FCRA").

Here, Plaintiff alleges that Defendants were "willful[] and reckless[]" in reporting the account as delinquent to multiple credit reporting agencies, despite having been aware of evidence indicating that it was fraudulently established. (Dkt. 1-2 at ¶¶ 13-14; *see id.* at ¶ 13 (alleging that "one or both Defendants have willfully and recklessly disregarded the evidence of fraud *provided to Defendants by Plaintiff*" (emphasis added))). Plaintiff also alleges that Defendants' continued statements to these credit reporting agencies have damaged his credit and have caused him economic loss. (*Id.* at ¶ 17). Plaintiff's relatively sparse allegations are primarily focused upon Defendants' conduct after *he* provided them with notice and materials regarding the disputed nature of the account. (*See id.* at ¶¶ 9-14).

During oral argument, Plaintiff's counsel conceded that he was unaware of whether Defendants received any notice from the credit reporting agencies. Instead, he explained that the Complaint alleges that Plaintiff advised Defendants of the contested nature of the account, and yet Defendants continued to report an inaccurate credit claim against him. Accordingly, Plaintiff's allegations fall squarely within the provisions of § 1681s-2(a)(1)(B), and not § 1681s-2(b). *See Weich-Pulaski*, 2010 WL 5491113, at *4 ("Here, the plaintiff alleges that she notified the defendants of the inaccuracies and demanded their correction. There is no indication that the credit reporting agency notified the defendants of a dispute. Thus, the claim would arise under section (a)."); *MacPherson*, 2010 WL 3081278, at *4 ("[T]he plaintiff alleges that the defendant furnished inaccurate information

relating to him, a consumer, to Equifax, a consumer reporting agency, even though *the defendant had been notified by him that the specific information was inaccurate*, which is conduct expressly prohibited by 15 U.S.C. § 1681s-2(a)(1)(B)." (emphasis added)); *see also Kane*, 2005 WL 1153623, at *8 ("To the extent that a furnisher provides inaccurate information after receiving notice from the consumer himself, the 'conduct falls squarely within § 1681s-2(a)(1)(B).'" (quoting *Aklagi v. Nationscredit Fin.*, 196 F. Supp. 2d 1186, 1194-95 (D. Kan. 2002))).

"[O]nce a furnisher of information has notice from *any source and provides inaccurate information*, the conduct is 'subject matter regulated under . . . section 1681s-2' of the FCRA." *Kane*, 2005 WL 1153623, at *8 (emphasis added) (quoting 15 U.S.C. § 1681t(b)(1)(F)). Thus, any state law claims arising from Plaintiff's allegations that Defendants were willful, reckless, or negligent in disclosing information to the credit reporting agencies are expressly preempted by § 1681t(b)(1)(F) as "subject matter regulated under . . . section 1681s-2 . . . relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . ." *See* 15 U.S.C. § 1681t(b)(1)(F); *Okocha*, 700 F. Supp. 2d at 375-76. Put differently, Plaintiff's allegations that Defendants continued to report his delinquency to the credit reporting agencies after having been given notice from Plaintiff that such information was purportedly inaccurate unquestionably falls within the "subject matter" regulated by § 1681s-2. As such, the state law claims alleged in Plaintiff's complaint are preempted by § 1681t(b)(1)(F), and thus, they are dismissed on that ground. 15 U.S.C. § 1681t(b)(1)(F); *see Premium Mortg. Corp.*, 583 F.3d at 106 (noting that § 1681t(b) preempts both state statutory law and state common law claims);

*see also Okocha*, 700 F. Supp. 2d at 375-76 (listing the state law claims that were preempted by § 1681t(b)(1)(F)); *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 429 (S.D.N.Y. 2010) (finding that the plaintiff's "state tort claims of breach of fiduciary duty and negligence based on [the defendant] allegedly making 'false statements to credit bureaus' and 'neglect[ing] to make true statements to credit bureaus' . . . fall squarely within the subject matter regulated under § 1681s-2").

### 2. Plaintiff Cannot Enforce § 1681s-2(a) of the FCRA

To the extent that Plaintiff's complaint could be construed as asserting a federal cause of action under § 1681s-2(a), any such claim is not viable because "[t]here is no private cause of action under Section 1681s-2(a), for the FCRA limits the enforcement of this subsection to government agencies and officials." *Redhead*, 2002 WL 31106934, at *4 (collecting cases); *see Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012) (stating that the FCRA "plainly restricts enforcement of [§ 1681s-2(a)] to federal and state authorities"). Therefore, insofar as Plaintiff seeks to hold Defendants liable under § 1681s-2(a) of the FCRA, for failing to take appropriate actions upon his own notice of allegedly fraudulent activity, this claim is dismissed for lack of legal standing. *See Dickman v. Verizon Commc'ns, Inc.*, 876 F. Supp. 2d 166, 172 (E.D.N.Y. 2012) (dismissing the plaintiff's claim under § 1681s-2(a) for lack of standing).

At oral argument, Plaintiff argued that if his state law claims were preempted, and if he had no private right to action under § 1681s-2(a), then he was absent any recourse for his alleged injury. Courts have acknowledged that the FCRA's "statutory framework may seem troubling" in this regard because a furnisher of information may "continue[] to report

information regarding [an] account at a time when it knew the account was disputed." *See, e.g., Aklagi*, 196 F. Supp. 2d at 1194. Many courts have further recognized that "[c]onsumers are, however, entitled to some protection from such conduct, by reporting it to the Federal Trade Commission, which is authorized to enforce the terms of section 1681s-2(a)." *Weich-Pulaski*, 2010 WL 5491113, at *4; *see MacPherson*, 2010 WL 3081278, at *4 n.6 (noting that "individuals aggrieved by a violation based on this provision must rely on state or federal officials to sue on their behalf"); *Kane*, 2005 WL 1153623, at *4 (noting that "[w]hile plaintiffs may not enforce the terms of § 1681s-2(a) through a private cause of action, they can report violations to the Federal Trade Commission, which is authorized to enforce the terms of Subsection(a) under the FCRA"); *Dolan v. Fairbanks Capital Corp.*, No. 03-CV-3285(DRH)(MLO), 2005 WL 1971006, at *4 (E.D.N.Y. Aug. 16, 2005) (same).

Furthermore, the FCRA does provide for a private cause of action pursuant to § 1681s-2(b). *See Williams v. Bayview Loan Servicing, LLC*, No. 14-CV-7427 (KAM) (LB), 2016 WL 8711209, at *4 (E.D.N.Y. Jan. 22, 2016) ("[M]ost courts to have addressed the issue have held that a private right of action does exist for a violation of § 1681s-2(b)."); *Nguyen v. Ridgewood Sav. Bank*, 66 F. Supp. 3d 299, 305 (E.D.N.Y. 2014) ("Although the Second Circuit has not directly addressed the issue, the majority of courts to address whether a private right of action exists for willful or negligent noncompliance with Section 1681s-2(b) have recognized one.").[6] However, "[a] claim is stated pursuant to that section

---

[6] Section 1681s-2(b) provides that "[a]fter receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any

. . . only if plaintiff shows that: (1) the furnisher received notice of a credit dispute from a credit reporting agency, and (2) the furnisher thereafter acted in 'willful or negligent noncompliance with the statute.'" *Markovskaya v. Am. Home Mortg. Servicing, Inc.*, 867 F. Supp. 2d 340, 343 (E.D.N.Y. 2012) (citation omitted). Not only does Plaintiff fail to allege that any of the unidentified credit reporting agencies referred to in his Complaint rendered notice of a credit dispute to Defendants regarding the subject account, but Plaintiff's counsel confirmed at oral argument that none of the allegations in the Complaint make any such factual assertion. *See, e.g., MacPherson*, 2010 WL 3081278, at *4 n.5 (finding that "it does not appear that [the plaintiff's] claims arise under laws with respect to subject matter regulated under § 1681s–2(b)" where the plaintiff did not allege "that Equifax or another consumer reporting agency notified the defendant that the information it provided about the plaintiff was in dispute before August 8, 2009, when the plaintiff received notice from Equifax that his credit score had been reduced").

While the Court is sympathetic to Plaintiff's circumstances, the FCRA's statutory framework clearly reserves the exclusive right to enforce a violation of § 1681s-2(a) with governmental authorities and contemplates other mechanisms for consumers to take action to protect themselves. In sum, Plaintiff's state law causes of action, which are based upon

---

information provided by a person to a consumer reporting agency," a furnisher of information has a duty to investigate the dispute, review the materials provided by the consumer reporting agency, report the result of the investigation to the consumer reporting agency—as well as to all other consumer reporting agencies that the furnisher had provided the information to should it confirm the existence of an inaccuracy—and modify, delete, or otherwise block the inaccurate information from being reported. *See* 15 U.S.C. § 1681s-2(b)(1).

Defendants' alleged "willful," "negligent," or "reckless" reporting of inaccurate information to the credit reporting agencies, are preempted by the FCRA, and insofar as Plaintiff's allegations could be construed as asserting a cause of action to enforce § 1681s-2(a), any such claim must be dismissed for lack of legal standing.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. 4) is granted, and Plaintiff's complaint (Dkt. 1-2) is dismissed with prejudice. The Clerk of Court is directed to close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated:   September 10, 2018
         Rochester, New York